UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

WALTER T. REA,                          Case No. 08-30118-dof
                                        Chapter 13 Proceeding
            Debtor.                     Hon. Daniel S. Opperman
_____/

## OPINION

The Debtor, Walter T. Rea, has filed a Motion to Hold Receiver Paul Decocq in Contempt for Violation of the Automatic Stay. The Debtor also requests that Mr. Decocq turn over disbursements and assets of the bankruptcy estate. Mr. Decocq was appointed a Receiver by the Livingston County Circuit Court as part of a divorce action between the Debtor and his former spouse, Mary Krisanne Rea. Mr. Decocq filed a motion with this Court seeking authority and further direction pursuant to 11 U.S.C. § 543. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and §§ 157(a) and (b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) and 11 U.S.C. §§ 362, 541, and 543.

### Facts

Walter Rea (Debtor) was married to Mary Krisanne Rea for many years, but their marriage faltered. In 2005, Ms. Rea filed a divorce complaint against the Debtor in the Livingston County Circuit Court. As part of that divorce proceeding, Ms. Rea filed a motion to appoint Paul Decocq as a receiver to preserve and protect some of the parties' marital assets. Ms. Rea's motion was

1

granted.  The order[1] appointing Mr. Decocq as a Receiver contained the following language:

> 2.      The Receiver shall marshal and sell the assets shown on **_EXHIBIT A_** attached to this Order and among other things, including the sale of all personal property, industrial property vehicles and boats and shall receive, manage and control these properties to preserve the parties assets, and shall be authorized to stand in the shoes of each of the parties to this litigation and act for and on their behalf in taking any and all action necessary and required in the discretion of the Receiver to preserve the assets of the parties.

> 3.      The authorization herein given to the Receiver shall include all powers and authority conferred by statute and case law, including but not limited to MCL 600.5201 et seq., to evict persons from property; sell industrial and personal property, collect rent, collect any and all oil, gas and mineral right payments the parties receive, including those from Defendant's inherited property to be used to pay debts, including but not limited to delinquent property taxes and income tax payments in the amount of $300.00 per month due on the 28th of each month; list and sell assets with a realtor of the Receiver's choosing; pay taxes, mortgages, and land contract payments from funds available to the Receiver in order to protect the assets of the parties; pay real estate commissions, usual and customary closing costs, and any and all other reasonable expenses and costs including repairs to premises necessary to make the properties saleable; pay off land contracts from funds available to the Receiver and obtain deeds therefrom in the name of the parties to this litigation.

On September 22, 2006, a Judgment of Divorce ("Judgment") was entered by the Livingston County Circuit Court.  In addition to dissolving the marriage between Ms. Rea and the Debtor, the Judgment addressed a number of property settlement and financial issues between the parties.  First, the Judgment, in paragraphs 3 - 5, detailed the effect of the divorce in the event that either party filed for relief under the United States Bankruptcy Code:

---

1.  The Court notes that the record before it consists of a copy of the order appointing Mr. Decocq as a receiver that is not dated or signed by the parties or Family Court Judge Suzanne Geddis. Although this order appears to be in the form of a  proposed order, the record also indicates that  an order appointing Mr. Decocq was subsequently entered on August 25, 2005 and a second order regarding Mr. Decocq's appointment as receiver was entered on November 18, 2005, which refers to his initial appointment as a receiver.  Since neither party objected to the Court's consideration of the copy of the order as contained in the record, the Court presumes that the undated and unsigned version of the order appointing Mr. Decocq is identical to the order as entered by Judge Geddis on August 25, 2005.

3.    That each of the Plaintiff[2] and Defendant, by assuming their each individual share of certain marital debts as provided herein above, have assumed domestic obligations which are not dischargeable under the United States Bankruptcy Code, 11 USC 1328(b)(5).

4.    That all monies each of the respective parties may owe to the other, or to third parties, pursuant to the provisions of this Judgment of Divorce shall be non-dischargeable in bankruptcy, and,

5.    That in the event each party should file for relief under the U.S. Bankruptcy Code and it is determined that monies said party may owe to the other party herein, pursuant to the provisions of the Judgment of Divorce, are dischargeable in bankruptcy, or in the event that a party seeks protection under the U.S. Bankruptcy Code or fails to pay an obligation as required under the provisions of this Judgment of Divorce causing the other party to pay such obligation, then said funds, to the full extent owed the other or third party, shall be automatically converted to non-dischargeable spousal support payable to and for the benefit of the other party.  This provision is independent of, and not limited to or affected by, any other provision regarding spousal support contained in this Judgment of Divorce. Spousal support paid under these conditions shall not be considered income to payee nor are they deductible by payer.

Second, the Judgment, in paragraphs 15[3] and 16, continued the receivership of Mr. Decocq as follows:

15.    That the Order dated August 23, 2005, appointing Attorney Paul Decocq as Receiver and revised Order dated November 18, 2005, shall remain in full force and effect.  The Receiver shall continue his receivership of any and all interest which either of the parties have in any real property described below.  In addition to the Receiver having the power and control to effectuate the sale of the below-outlined properties, including but not limited to continuing to receive and collect any and all oil, gas and mineral checks, and any and all rent payments for any pieces of property being rented.  The proceeds received by the Receiver shall be used for payment of real estate taxes on the parcels to be sold and until such time as they are

---

2.    In the divorce proceeding, Ms. Rea was the plaintiff, and the Debtor was the defendant.

3.    Neither party has disputed the actual entry date of the order appointing Mr. Decocq as a receiver in the divorce proceeding. A discrepancy exists in the date of the order as indicated in the Judgment (August 23, 2005) and the date stated in the second order (August 25, 2005) addressing Mr. Decocq's appointment as a receiver.

all sold and the IRS debt is paid in full. The oil, gas and mineral rights checks that the Receiver shall receive every month are as follows:

      a.     DTE Gas and Oil Company payment under owner code no. 9768.

      b.     DTE Gas and Oil Company payment under owner code no. 6538.

      c.     DTE Gas and Oil Company payment under owner code no. 6470.

      d.     Petroleum Development Corporation payment under investor no. 8380000662.

      e.     Jordon Development payments under owner code no. REA003.

16.    That Defendant shall be solely responsible for the entire cost of the Receivership and Plaintiff shall be reimbursed $6,000 from the Receiver's trust account for the fees paid to Receiver and said fees shall be paid upon the Receiver's termination. In the event that the Receiver's trust account has insufficient funds to pay Plaintiff, then Plaintiff shall have a lien on any assets awarded to the Defendant for that amount.

The Judgment also addressed the many parcels of real estate and other personal property interests of the Debtor and Ms. Rea. Some real estate parcels, such as the former marital home at 11165 Silver Drive, Hamburg, Michigan; the Oak Street properties; the M-32 lots; and Farrier's Addition were to be subject to the control of the Receiver. For example, the former marital home was described as follows in paragraph 18 of the Judgment: "[t]hat the former marital home is currently listed for sale and the sale is subject to the control of the Receiver, Paul Decocq." The Judgment further stated in paragraph 23 that the Oak Street properties: "[s]hall continue to be listed for sale and shall continue to be in the control of the Receiver." Similar language appears in

4

paragraphs 26 and 28 of the Judgment.

Other property interests, such as the property commonly labeled "Thunder Bay Land" was actually owned by a separate entity, which in turn was owned by the Debtor. Mr. Decocq was given the authority and power to sell this property and divide the net proceeds evenly between the Debtor and Ms. Rea. Similarly, property described as the "Old Mill Property" was to be controlled by Mr. Decocq.

Other properties, such as the property identified as "The Log Cabin" were awarded directly to the Debtor. Likewise, other properties such as the property identified as the "Lake Avalon Cottage" and the "Pettinger Parcel" were awarded directly to Ms. Rea.

The oil, gas and mineral rights were addressed in paragraph 40 of the Judgment as follows:

> 40. That all royalty payments shall continue to be paid to the Receiver for payment of real estate taxes on the parcels to be sold until all such parcels are sold. Once all of the property in control of the Receiver, as outlined in the Judgment have been sold and all real estate taxes are current, the Defendant shall be awarded any excess funds held in the Receiver's Trust Account and shall be awarded the oil, gas and mineral rights checks as his sole and separate property free and clear of any claim from the Plaintiff which are as follows:
>
> > a. DTE Gas and Oil Company payment under owner code no. 9768.
> >
> > b. DTE Gas and Oil Company payment under owner code no. 6470.
> >
> > c. Petroleum Development Corporation payment under investor no. 8380000662.
> >
> > d. Jordon Development payments under owner code no. REA003.

Pursuant to the Orders appointing Mr. Decocq as Receiver and the Judgment, Mr. Decocq began to collect rents, royalty checks, and to sell various properties. One of Mr. Decocq's duties

was to pay real estate taxes so as to avoid foreclosure by the local taxing authorities.

On January 15, 2008, the Debtor filed a petition with this Court seeking relief under Chapter 13. The Debtor's Plan called for payments of $826.00 monthly for 60 months from income received by the Debtor. Per the Debtor's Plan, unsecured creditors will be paid 100%, plus 4% interest. The implementation of the Debtor's Plan is contingent upon the sale of the Debtor's real property owned with Ms. Rea. The Debtor's Chapter 13 filing and subsequent Plan creates a classic conflict between a state court receiver and the chapter 13 debtor and the Debtor's estate. The Debtor prefers to have control given to him of the sale of these properties. The Debtor's ex-spouse, Ms. Rea, and the Receiver, Mr. Decocq, argue that the control should remain with Mr. Decocq. The Chapter 13 Trustee has expressed his acquiescence in Mr. Decocq remaining in control of these properties.

Analysis

The parties initially argue whether the property described in the Judgment is property of the estate under 11 U.S.C. § 541. To analyze this issue, the Court notes that 11 U.S.C. § 541(a) broadly describes the estate of all property including "all legal or equitable interests of the debtor in property as of the commencement of a case." For further analysis, however, the Court must turn to state law to determine whether various property interests described in the Judgment are owned by the Debtor and whether he has an ownership interest in this property. *Butner v. United States*, 440 U.S. 48 (1979). In Michigan, the circuit court is granted the authority to determine the property rights of the parties. Mich. Comp. Laws § 552.19 and § 552.401.

A close reading of the Judgment indicates that various parcels, such as the Log Cabin and the Lake Avalon Cottage, respectively, were awarded to the Debtor and Ms. Rea as sole and separate property. Other parcels, however, such as the Oak Street Properties, the M-32 Lots, the Farrier's

Addition, and the 5.2 Acres on Funk Road are silent as to the respective ownership rights as to the Debtor and Ms. Rea.

Mich. Comp. Laws § 552.102 states:

Sec. 2. Every husband and wife owning real estate as joint tenants or as tenants by entireties shall, upon being divorced, become tenants in common of such real estate, unless the ownership thereof is otherwise determined by the decree of divorce.

Accordingly, pursuant to Mich. Comp. Laws § 552.102, any property not specifically addressed in a divorce judgment is determined by statute to be held as tenants in common. All properties described in the Judgment, except those awarded solely to Ms. Rea, therefore, constitute property of this estate to the extent same are held as a tenant in common by the Debtor or owned exclusively by the Debtor.

As for the interests of Mr. Decocq, the Orders appointing him as a Receiver and the Judgment clearly require Mr. Decocq to exercise control over parcels of real property in order to collect rents, royalties, and other income and pay taxes and operating expenses. These rights and obligations are consistent with Mich. Comp. Laws § 600.2926, which states in part:

In all cases in which a receiver is appointed the court shall provide for bond and shall define the receiver's power and duties where they are not otherwise spelled out by law. Subject to limitations in the law or imposed by the court, the receiver shall be charged with all of the estate, real and personal debts of the debtor as trustee for the benefit of the debtor, creditors and others interested.

Likewise, Mich. Comp. Laws § 600.3510 details the powers and duties of a receiver as follows:

Upon giving bond and qualifying, as the court may direct, such permanent receiver is vested with all the estate, real and personal, of such corporation and is trustee thereof for the benefit of its creditors and stockholders, and has all the powers, authority and remedies of an assignee for the benefit of creditors under RJA chapter 52, and also the power to continue the business of such corporation for such period as the court permits; and so far as they may be applicable, is subject to all the duties and obligations of such an assignee, except where other provisions are herein made.

7

As near as this Court can tell, however, none of the quoted statutes, the Judgment, or the Orders appointing Mr. Decocq as Receiver vest the Receiver with any ownership interests in the parcels of real property subject to his control. Instead, Mr. Decocq is directed to sell the various properties, pay expenses where appropriate, and then disburse the net proceeds. The limited power and interest of the Receiver is clear and illustrated by the disposition of the oil, gas and mineral rights described in paragraph 40 of the Judgment. As this paragraphs states, once the property in control of the Receiver has been sold and real estate taxes are current, the Debtor is awarded the excess funds held in the Receiver's account and is awarded the remaining and future oil, gas and mineral rights as his sole and separate property.

Finally, nowhere in the Judgment or the Orders appointing Mr. Decocq as Receiver is there any indication that Mr. Decocq, as a Receiver, would own any of these properties. Had the parties wished this result, they certainly had the opportunity to state as much in at least three separate Orders. Moreover, since the parties obviously were aware of the ability of either party to file bankruptcy as evidenced by paragraphs 3 - 5 of the Judgment, the parties could have easily included language addressing this possibility, if they wished to do so.

The Court therefore concludes that except for property described in the Judgment that was awarded separately and solely to Ms. Rea, all other remaining property is property of this estate either in the Debtor's sole interest, again pursuant to the Judgment, or as a half interest as a tenant in common.

Under the Bankruptcy Code, Mr. Decocq is a custodian as defined under 11 U.S.C. § 543. Section 543(a) prohibits a custodian from making any disbursements or taking any action in the administration of property of the debtor, including rents or profits from property of the estate, except

8

such action as is necessary to preserve such property. In this case, it is clear from a reading of the Judgment and the Order appointing Mr. Decocq as Receiver that Mr. Decocq was appointed as a receiver to preserve various assets of the Debtor and Ms. Rea. From the record developed so far by the parties, it appears that Mr. Decocq is simply collecting rents, royalties, and other income and reporting those collection activities to the Chapter 13 Trustee, Mr. Bekofske. To date, the Court does not see any action taken by Mr. Decocq as being a violation of 11 U.S.C. § 362.

Under 11 U.S.C. § 543(d), this Court is vested with authority to excuse compliance with subsections (a), (b), and (c) of Section 543, "if the interests of the creditors . . . would be better served by permitting the custodian to continue in possession, custody, or control of property" of the estate. In this case, the Court holds that the Judgment created a tenancy in common with the Debtor and Ms. Rea in a number of parcels of property. The Court construes the request of Mr. Decocq for further direction as a request for him to continue to administer the properties consistent with the terms of the Judgment. Since the parties have not had an opportunity to present proofs as to the issue of whether the standard of 11 U.S.C. § 543(d)(1) has been met, the Court will schedule a status conference, and, if need be, an evidentiary hearing to address those issues. In preparation, the Court directs the parties' attention to the cases of *In re Lizeric Realty Corp*, 188 B.R. 499 (Bankr. S.D.N.Y. 1995), *In re S.E. Hornsby & Sons Sand & Gravel Co., Inc.*, 57 B.R. 909 (Bankr. M.D.La 1986), and *In re Northgate Terrace Apartments Ltd.*, 117 B.R. 328 (Bankr. S.D. Ohio 1990), as well as other cases cited in 5 <u>Collier on Bankruptcy</u>, ¶ 543.05 (Lawrence P. King ed., 15th ed. rev. Sept. 2005).

Conclusion

The Court holds that properties identified in the Judgment are owned by the Debtor and Ms. Rea as tenants in common except where there is a clear statement of an award solely to one party.

9

All property awarded to the Debtor, either solely or as a tenant in common with Ms. Rea, is property of the estate pursuant to 11 U.S.C. § 541(a)(1).

Mr. Decocq, as the state court appointed receiver, does not have a property interest in the property described in the Judgment. He is a custodian pursuant to 11 U.S.C. § 543. To date, none of the actions or inactions of Mr. Decocq brought to the Court's attention violate 11 U.S.C. § 362. The Court will conduct a status conference to address the remaining issues in this matter.

**Signed on September 05, 2008**

                                    **/s/ Daniel S. Opperman**
                            **Daniel S. Opperman**
                            **United States Bankruptcy Judge**